# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

Elliott Company                                      Civil Action No. 6:15-02404

versus                                                          Judge Dee D. Drell

Montgomery                              Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion To Dismiss pursuant to Rule 12(b)(6) filed by Defendant, Tony Montgomery ("Montgomery") [Rec. Doc. 21], Plaintiff, Elliott Company's ("Elliott") Opposition [Rec. Doc. 23] and Defendant's Reply thereto [Rec. Doc. 30]. Oral argument is not necessary. For the reasons that follow, the undersigned will recommend that Defendant's Motion be denied.

### *Factual Background*

Plaintiff, Elliott Company's ("Elliott"), Complaint provides the following factual background:

Elliott designs, manufactures, installs and services turbo-machinery for prime movers and rotating machinery world-wide. Montgomery was employed by Elliott as a Field Service Engineer and then a Project Manager I–Field Service from June 28, 2010 until his voluntarily resignation on July 1, 2015. Montgomery left his employment with Elliott for a job with M.H.I. International Compressor Corporation

("M.H.I.") which is a direct competitor of Elliott.

When he began his employment with Elliott, Montgomery executed an "Employment and Patent Agreement" in which he agreed "to keep secret all confidential information of the Company during or subsequent to his employment." "Confidential Information" included "matters of technical nature, such as scientific, trade and engineering secret, 'know-how,' formulae, drawings, secret processes or machines, inventions, and research projects, and matters of a business nature, such as information about costs, profits, markets, sales, lists of customers, and other information of a similar nature to an extent not available to the public, and plans for future development..." He further agreed, upon termination of his employment, to deliver to Elliott "all memoranda, notes, records, reports, manuals, drawings, blueprints, and any other documents belonging to the Company..."

In his capacity as Project Manager I–Field Service, Montgomery's responsibilities included providing quotes and coordinating field service projects for Ellott's customers. He also worked to establish profit margins and promote business growth for Elliott through customer satisfaction. As part of his position, Montgomery was given access to and did access (1) non-public confidential business of Elliott, including business strategy, customer information and pricing, and (2) sensitive information regarding Elliott's customers and upcoming projects and bids which

include proposals, bids and cost analysis spreadsheets. To facilitate his position, Elliott provided Montgomery with the use of an Elliott computer and an Apple iPhone 5s cell phone.

Upon his resignation, Montgomery returned his company-issued equipment, however, he did not and has not returned any Elliott business information or the USB devices that he attached to his computer, despite Elliott's demands. Elliott's on-going forensic analysis of Montgomery's equipment has shown that at the time he was offered employment with M.H.I. and after he resigned from Elliott, Montgomery made numerous unauthorized transfers of files from his Company computer to his own external portable USB drives and devices as well as unauthorized deletions of electronic computer folders and files shortly before his departure from Elliott. These acts resulted in Elliott's inability to locate or access certain of these computer folders and files which has caused it harm and expense in the form of costs associated with analyzing Montgomery's activity.

Based on these allegations, Elliott filed this Verified Complaint against Montgomery alleging claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C § 1030, the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431, and the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, as well as state-law breach of fiduciary duty, conversion, and breach of

contract. In his Motion To Dismiss, Montgomery seeks to dismiss all claims of the Complaint.

*Legal Standard*

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Conclusory allegations and unwarranted deductions of fact, however, are not accepted as true,  *Collins v. Morgan Stanley*, 224 F.3d at 498, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The allegations must be sufficient "to raise a right to relief above the speculative level," *Id.* at 555, and "the

pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at

556.

*Law And Analysis*

*1. Computer Fraud and Abuse Act (CFAA)*

Although principally a criminal statute, the CFAA provides for civil liability

where a person

> knowingly and with intent to defraud, accesses a protected computer
> without authorization, or exceeds authorized access, and by means of
> such conduct furthers the intended fraud and obtains anything of value,
> unless the object of the fraud and the thing obtained consists only of the
> use of the computer and the value of such use is not more than $5,000
> in any 1-year period

18 U.S.C. § 1030(a)(4) (2012). To establish a civil claim  a plaintiff must prove the

following five elements: (1) the defendant has accessed a protected computer; (2) the

defendant has done so without authorization or by exceeding such authorization as

was granted; (3) the defendant has done so knowingly and with intent to defraud; (4)

in doing so the defendant has furthered the intended fraud and obtained anything of

value; and (5) the plaintiff has incurred "loss ... during any 1-year period ...

aggregating at least $5,000 in damages.[1]" *See* §§ 1030(a)(4); (a)(5); (c)(4)(A)(i)(I);

(g).

---

[1] Subclause (I) permits a civil action when a criminal violation results in, "loss to 1 or
more persons during any 1-year period (and, for purposes of an investigation, prosecution, or
other proceeding brought by the United States only, loss resulting from a related course of
conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value."

The term"loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service" § 1030(e)(11).

Montgomery contends that Elliott has failed to allege that an actionable "loss" occurred because of the action or inaction of Montgomery. In particular Montgomery alleges Elliott has not alleged that it suffered "recoverable damages" or "loss" because  under the definition of "loss," there has been no "interruption of service" to Elliott as the alleged costs were incurred in the regular course of Elliott's business.

Elliott contends that it has pleaded facts showing Montgomery's violations under §§ 1030(a)(2)(C), (a)(4), and (a)(5)(A)–(C)  and that it suffered loss identified under (c)(4)(A)(i)(I). Elliott argues that Montgomery misinterprets the statutory definition of "loss" under § 1030(e)(11). Specifically, Elliot argues that, contrary to Montgomery's contention, "loss" includes "any reasonable cost to a victim" thereafter, the statute provides examples of such costs by using the term "including" to set apart the examples which follow. The list of examples culminates with the statutory language, "or other consequential damages incurred because of interruption of service."

The Court agrees with Elliott's interpretation of the clear language in the statute. In paragraphs 48-49 of the Complaint, Elliot alleged that it has spent in excess of $5,000 over a 1-year period in investigating the wrongful acts committed by Montgomery, which includes the cost of hiring a forensic firm to analyze Montgomery's computer activity after his resignation, the cost associated with forensic efforts to assess what computer folders and files were impermissibly accessed, transferred, and deleted by Montgomery, and the cost associated with Elliott's subsequent attempts to restore the impermissibly deleted files and has suffered damage to its data, programs and computer systems. *R. 1, ¶¶ 48-49.*

The Court finds that Elliott has alleged a plausible claim under CFAA.

*2. Louisiana Uniform Trade Secrets Act*

Elliott alleges that Montgomery misappropriated its trade secrets under the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, *et seq.* The Louisiana Unfair Trade Secrets Act ("LUTSA"), La.Rev.Stat. § 51:1431, proscribes the misappropriation of information that constitutes "trade secrets." Under LUTSA, a plaintiff may obtain injunctive relief as well as damages for actual losses and unjust enrichment. La. R.S. 51:1433. "In order to recover damages, a complainant must prove (1) the existence of a trade secret; (2) a misappropriation of the trade secret by another; and (3) the actual loss caused by the misappropriation. *Computer Manage-*

*ment Assistance Co. v. Robert F. DeCastro, Inc*., 220 F.3d 396, 403 (5th Cir. 2000).

Under LUTSA:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La. R.S. § 51:1431(4).

Montgomery contends that Elliott's Complaint makes no factual reference to the independent economic value of its alleged trade secrets and no factual reference to any use, disclosure or wrongful profit made by Montgomery. He further contends that Elliott's allegation in paragraph 54 of its Complaint, "Elliot's confidential and proprietary information is of great value to Elliott, and this confidential and proprietary information would give any competitor who improperly acquired it an unfair competitive advantage," is merely an unsupported conclusory allegation.

Elliot argues that the Complaint alleges the information Montgomery misappropriated was trade secrets, and included customer and pricing lists. Elliott further argues that Montgomery wrongfully misappropriated this confidential information by transferring, without authorization, Elliott's files to his personal email

account.

"Determining whether information qualifies as trade secrets is a question of fact. *Ferrellgas, L.P. v. McConathy*, 2010 WL 1010831, *7 (W.D.La.2010) (J. Drell). Louisiana courts have held, however, that "[a] customer list or special pricing list may be a trade secret if efforts are made to maintain its secrecy." *Pontchartrain Med. Labs. Inc. v. Roche Biomedical Labs., Inc.*, 677 So.2d 1086, 1090 (La.App. 1st Cir.1996). "The efforts required to maintain secrecy are those reasonable under the circumstances, and courts do not require extreme and unduly expensive procedures to be taken to protect trade secrets." *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 183 (5th Cir.1988)." *Complete Oilfield Management & Maintenance Inc. v. Hogg*, 2015 WL 1467104, at *3 (W.D.La.,2015) (J. Haik).

Paragraphs 17 and 18 of the Complaint allege that Montgomery accessed non-public confidential business information regarding Elliott's"business strategy, customer information, and pricing" as well as "sensitive" information related to its business strategies, customers and pricing. *R.1, ¶¶ 17, 18*. The Complaint further alleges that Elliott took reasonable steps to ensure that this information was safeguarded and maintained in confidence by advising its employees of the need to keep information relating to Elliott "confidential," and reinforced the confidentiality of this information by requiring employees to sign a "Employment and Patent

Agreement," which included a confidentiality provision. *Id at ¶¶ 9 , 10.* Elliott also restricted "access to its computer system database through the use of usernames and passwords and other electronic access restriction and control measures" and permitted remote access to confidential information only by authorized individuals via secured online access. *Id at ¶¶ 11-12.*

Elliott alleges that the "confidential and proprietary information [at issue] is of great value to Elliott" as it "would give any competitor who improperly acquired it an unfair competitive advantage." *Id at ¶ 54.* Elliott alleges it was forced to file this lawsuit at great expense in order to protect its confidential and proprietary information. *Id at ¶ 59.*

Elliott further alleges that Montgomery wrongfully misappropriated this confidential information by transferring, without authorization, Elliott files to 15 portable USB drives, all of which have not been returned to Elliott, and impermissibly sending Elliott's trade secrets, "including but not limited to proposals, quotes, and a cost analysis spreadsheet," to his personal email account. This transfer occurred after Montgomery received an offer of employment from M.H.I. and continued until his July, 2015 resignation from Elliott. *Id at ¶¶ 27, 30.*

Elliott contends that Montgomery's answer stating that he has engaged "experienced forensic technology consultants" "to preserve such potential evi-

dence"demonstrates the sensitivity of the information he possesses. Also, Elliott

contends, this Court's Joint Protective Order defines as "confidential" any informa-

tion owned or created by Elliott that Montgomery acquired while employed at Elliott.

*R. 17.*

Based on the allegations cited above, the Court finds that Elliott has alleged a

plausible claim under LUTSA.

### 3. Louisiana Unfair Trade Practices Act ("LUTPA")

Montgomery contends that Elliott's claims under the Louisiana Unfair Trade

Practices Act ("LUTPA") should be dismissed as they are premised upon the assertion

that the alleged misappropriated information is "confidential" which Montgomery

disputes. The LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405. The statute

defines the word "person" to include natural persons, partnerships, or corporations, La.

R.S. 51:1402(9), and states that any person who suffers an ascertainable loss as a result

of an unfair or deceptive trade practice can maintain a cause of action under LUTPA.

La. R.S. 51:1409(A). *See, also, Cheramie Services, Inc. v. Shell Deepwater Production,*

*Inc.*, 35 So.3d 1053, 1057 (La.2010). Therefore, "[t]he elements of a cause of action

under the LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2)

that impacts a consumer, business competitor[,] or other person to whom the statute

grants a private right of action; (3) which has caused ascertainable loss." *Who Dat Yat*

*LLC v. Who Dat ? Inc.*,  2011 WL 39043, at *3 (E.D.La. Jan. 4, 2011).

The statute does not specifically state what constitutes an unfair or deceptive trade practice. *Levine v. First Nat. Bank of Commerce*, 948 So.2d 1051, 1065–66 (La. 2006). Instead, "[i]t has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition." *Cheramie Services, Inc.,* 35 So.3d at 1059. *See, also, Levine*, 948 So.2d at 1065–66. Louisiana jurisprudence explains that a trade practice is unfair when it offends established public policy and is unethical, oppressive, unscrupulous, or substantially injurious, *Levine* at 1065–66, and that a trade practice is deceptive when it amounts to fraud, deceit, or misrepresentation*, see, e.g., Southern General Agency, Inc. v. Burns & Wilcox, Ltd.*, 2012 WL 3987890 (W.D.La. 2012); *See also, Bartholomew Investments–A, L.L.C. v. Margulis*, 20 So.3d 532, 538–39 (La.App. 4 Cir. 2009), and the cases cited therein. A defendant's motivation is a critical factor; the actions must have been taken with the specific purpose of harming the competition. *Heart's Desire, LLC v. Edwards*,  (La.App. 2 Cir. 2011). The range of practices prohibited by LUTPA is narrow, but "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Cheramie Services, Inc.*, 35 So.3d at 1060.

Count V of the Complaint specifically alleges a claim under LUTPA stating that "Montgomery has engaged in false, misleading, deceptive, and unethical conduct in engaging in unlawful competition with Elliott." *Id at ¶ 80*. Specifically, the

Complaint alleges that "Montgomery misappropriated Elliott's confidential information and trade secrets and provided such information to Elliott's direct competitor, M.H.I. International Compressor Corporation" all constituting conduct which is "immoral and involves deception ... and other unethical conduct." *Id at ¶¶ 82, 83*. The Complaint further alleges that "[a]ll of the aforementioned actions were done to benefit Montgomery and harm Elliott;" causing Elliott to suffer "irreparable harm, injuries, and damages... including loss of relevant market share, and injury to business reputation and goodwill." *Id at ¶¶ 84, 85*.  Finally, the Complaint references all of the allegations set forth in support of Elliott's CFAA and LUTSA claims.

Based on the foregoing allegations in the Complaint, as well as those related to the claims under the CFAA and LUTSA, the Court finds that Elliott has alleged a plausible claim under the LUTPA.

## 4. Breach of Fiduciary Duty

Montgomery contends that Elliott's allegations as to the breach of fiduciary duty are vague and conclusory and should be dismissed under Rule 12(b)(6). Montgomery further contends that Elliott's allegations fail to include the elements necessary to maintain a claim for breach of fiduciary duty. Specifically, Montgomery contends that he was not Elliott's agent or mandatory and that Elliott has not alleged that it sustained any injury as a result of Montgomery's actions.

-14-

The elements of a cause of action for a breach of fiduciary duty are: (1) a breach by a fiduciary of an obligation to another; (2) a knowing collusion or participation in the breach by the fiduciary; and (3) damages suffered by another as a result of the breach.     *U.S. Small Business Admin. v. Beaulieu*, 75 Fed.Appx. 249, 252 (5th Cir. 2003) (citing *Brockman v. Salt Lake Farm Partnership*, 768 So.2d 836, 844 (La.App. 2 Cir., 2000).  "Further, the cause of action requires proof of fraud, breach of trust or action outside the limits of the fiduciary's authority." *Brockman*, at 844.

Employees and/or mandataries owe a duty of fidelity to their employers and/or principals. *ODECO Oil & Gas Co. v. Nunez*, 532 So.2d 453, 462 (La.App. 1 Cir.1988). The court in ODECO Oil stated:

> "The employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his service. He may not speculate for his gain in the subject-matter of his employment. He may not use any information that he may have acquired by reason of his employment either for the purpose of acquiring property or doing any other act which is in opposition to his principal's interests. He will be required to account to his employer for any gift, gratuity, or benefit received by him in violation of his duty, or any interest acquired

adverse to his principal without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise.' 21 R.C.L. 825, § 10.

*Id.*(quoting *Texana Oil & Refining Co. v. Belchic*, 90 So. 522 (1922)).

In *Restivo v. Hanger Prosthetics & Orthotics, Inc*., 483 F.Supp.2d 521, 534 (E.D.La.,2007), the court examined Louisiana state jurisprudence as to the fiduciary duty owed by employees to their employers, and stated, "[H]istorically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit.... Thus, the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices."

Louisiana courts have determined that soliciting an employer's customers and/or using confidential information that was acquired from the employer, while still employed for the employer, constitute breaches of the employee's fiduciary duty. *See e.g. Cenla Physical Therapy & Rehab. Agency Inc v. Lavergne*, 657 So.2d 177 (La App. 3 Cir., 1995) (finding genuine issue of material fact whether defendants breached fiduciary duty to employer by copying patient lists); *ODECO Oil*, 532 So.2d at 462 (breach of fiduciary duty where defendant acted in conflict with his employer by forming his own company and using his position with his employer to enhance his

-16-

private business); *Huey T. Littleton Claims Service, Inc. v. McGuffee*, 497 So.2d 790 (La.App. 3 Cir.,1986) (finding defendant breached his fiduciary duty by soliciting former employer's customers and copying employer's customer list).

Elliott alleges that Montgomery, as Elliott's Project Manager I–Field Service, breached his fiduciary duty to Elliott when he violated the "Employment and Patent Agreement" by disclosing "Confidential Information" to its competitor and new employer. *R. 1, ¶¶ 26-32*. This wrongful conduct violated Montgomery's duty of loyalty to Elliott. *Id at ¶ 90*. Elliott alleges Montgomery violated this duty when he engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit and which resulted in financial or commercial harm to Elliott. *See, Restivo*, 483 R. Supp. 2d at 535. Elliott contends it suffered further harm by Montgomery's refusal to return the confidential information. *R. 1, ¶¶ 36, 91*.

Considering the foregoing allegations and the applicable jurisprudence, the Court finds that Elliott has sufficiently pleaded a plausible claim against Montgomery for breach of fiduciary duty.

*5. Conversion*

Montgomery contends that "[t]o the extent that any [conversion] claim asserted by Elliott is dependent on Elliott proving that any information in dispute is in fact "Confidential Information" (i.e. secret) those claims should be dismissed." *R. 21, p.*

*13.* "A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel. The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation." *Dual Drilling Co. v. Mills Equipment Investments, Inc*., 721 So.2d 853, 857 (La.,1998)

Here, Elliott has pleaded that its confidential and proprietary information constituted valuable property belonging to Elliott, and Montgomery is in wrongful possession of said property, which he accessed and transferred without authorization and in violation of the Employment and Patent Agreement. *R. 1, ¶¶ 64–66.* In his Answer, Montgomery admitted to possessing and retaining said information in the form of the USB drives containing Elliott's confidential information. *R.18 , ¶ 38.* The Court finds that Elliott has alleged a plausible claim against Montgomery for conversion.

*6. Breach of Employment Agreement*

Elliott again contends that Elliott's breach of employment agreement should

be dismissed because it is "inexorably linked to Elliott's assertion that the information in Mr. Montgomery's possession is 'Confidential Information.' " *R. 21, p. 13*. The Count has found that Elliott has adequately pleaded facts to show that the information at issue constitutes "Confidential Information," including trade secrets.

In order to recover on his breach of contract claim, Elliott must prove the following elements: (1) the obligor's [Montgomery] undertaking an obligation to perform, (2) the obligor [Montgomery] failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee [Elliott]. *Ramos v. Swiftships Shipbuilders, LLC*, 2015 WL 5024641, at *5 (W.D.La.,2015) (citing *Favrot v. Favrot*, 68 So.3d 1099, 1109 (La.App. 4th Cir.2011)); *see also Hercules Machinery Corp. v. McElwee Bros., Inc.*, 2002 WL 31015598 at *9 (E.D.La. Sept. 2, 2002) ("The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages").

The allegations provide that in executing the Employment and Patent Agreement when he became employed by Elliott, Montgomery agreed to "keep secret all confidential information of the Company, and agree not to disclose it to anyone outside of the Company, either during or after my employment with the Company, except upon written consent of the Company. *R. 1-1, Exh. A, R. 1-1, Exh. A. R. 1-1, Exh. A, ¶ 2; R. 1, ¶¶ 10, 74*. Montgomery also agreed that "[d]uring or subsequent to

-19-

my employment by the Company, I will not use for my own benefit or for the benefit of any other party other than the Company any confidential information acquired as a result of my employment." *R. 1-1, Exh. A, ¶ 2.* Montgomery further agreed "to deliver promptly to the Company on Termination of my employment with the Company, all memoranda, notes, records, reports, manuals, drawings, blueprints, and any other documents belonging to the Company, including all copies of such materials, which I may then possess or have under my control." *Id.*; *R. 1, 76;*

Based on the foregoing, Elliott has sufficiently alleged a claim for breach of contract.

## *Conclusion*

For the foregoing reasons and applicable jurisprudence, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff, Elliott, the Court recommends that Montgomery's Motion To Dismiss all of Elliot's claims under Rule 12(b)(6) be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time

of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th  Cir.1996).

THUS DONE AND SIGNED in Lafayette, Louisiana on the 28th day of September, 2016.

_____

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**